James P. MITCHELL, Secretary of Labor,
United States Department of Labor,
Appellant,

v.

Charles H. BLANCHARD, Appellee.

No. 17801.

United States Court of Appeals
Fifth Circuit.

Dec. 14, 1959.

Bessie Margolin, Asst. Sol., Dept. of Labor, Washington, D. C., Harold C. Nystrom, Acting Sol. of Labor, Jacob I. Karro, Attorney, U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Attorney, Birmingham, Ala., for appellant.

R. A. Hepner, of Fisher & Hepner, Pensacola, Fla., for appellee.

Before TUTTLE, BROWN and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This is another of those appeals by the Secretary of Labor from judgments denying an injunction against further violation of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., when the employer concedes past violations but undertakes to comply in the future.

The facts leading up to the filing of the present suit may be briefly summarized: During the two years immediately preceding the filing of the suit, respondent was engaged as a general contractor in building projects that were "subject to the act;" his principal business was military construction; this was chiefly at Air Force or Naval air fields; he contended that he did not observe the overtime requirements of the Wage and Hour law because he didn't think these military projects were covered.[1] After the suit was filed Blanchard commenced a harbor deepening operation on which he did not pay overtime rates.

Several investigations were made by employees of appellant seeking information from Blanchard; finally Blanchard refused to permit further inspection of the records, whereupon an administrative subpoena requiring production of the records was issued in the name of the Secretary; this was ignored by Blanchard, and the Secretary then, on September 25, 1957, filed in the district court a petition to require compliance with the subpoena. This petition stated that Blanchard was being charged with violation of the overtime provisions of the act on the construction jobs at the airports. Blanchard then consulted a lawyer, who filed a response which included the statement:

"There are no reasonable grounds upon which the administraor * * * could base his order for investigation and inspection and taking of testimony, or base his belief that respondent has violated the provisions of the Fair Labor Standards Act."

There was also the following assertion:

"Neither respondent nor respondent's employees are now or were in the past engaged in interstate commerce, or the production of goods for commerce."

---

1. His testimony was:

"Q. What type of construction work have you been engaged in? A. We work primarily as Military Contractors.

"Q. But not exclusively? A. Not exclusively.

"Q. Have you ever complied with the Fair Labor Standards Act to your knowledge, or as such? A. We thought we were complying with it.

"Q. And in what respect did you think you were complying with it? A. It was our belief that none of our work was covered under the Act.

"Q. In other words, you didn't think you had to comply with it because you did not believe your work was covered by it? A. All of our work as I have stated, was primarily military construction with the possible exception of several schools. And it was my understanding that military work by its very nature could not be in interstate commerce and for that reason we didn't

The response also attacked the subpoena on three constitutional grounds.

Thereafter, *by agreement*, the court entered an order requiring the production of the records sought. This was on November 27, 1957. Thereafter, on April 16, 1958, appellant filed this suit for injunction, alleging the violations above set out; the respondent denied these allegations, but several months later admitted substantially all of them in response to written interrogatories, and, on the pretrial hearing held on November 20, 1958, he stipulated that he had violated the provisions of the act as to seven contracts, one of which (the harbor-deepening contract) had been started after the suit had been filed and continued through the date of trial. On the trial that followed immediately thereafter Blanchard testified that after he had consulted counsel "sometime after April 1958,"[2] he had sought to comply with the provisions of the act. This statement is in conflict with the stipulation in which he admitted continued ignoring of the overtime provisions down to the date of trial, some seven months after consulting counsel in the handling of the suit.

The trial court stated at the conclusion of the trial:

"I will announce now, that on the face of the record it is a pretty strong showing for the necessity of the issuing of the injunction."

After briefs were filed the court took the case under advisement and later entered its order in which it was stated that "there was no intentional violation of the act and there is no reasonable likelihood defendant will violate the Act in the future" and denied the injunction.

■ We conclude that the trial court's first impression as to the necessity of an injunction was the only proper conclusion it could make on this record, and the order denying the injunction was not supportable.

■ The circumstances in which an appellate court can overturn the judgment of a trial court denying an injunction in wage and hour cases have been repeatedly stated by us. See Mitchell v. Hodges Contracting Co., 5 Cir., 238 F.2d 380, 381, where we included as factors to be considered, "the employer's previous actions of non-compliance or litigation, the moral and business responsibility of the employer, the extent to which promises of future compliance are something more than empty, idle words unmatched by the institution of effectual corrective procedures, or are undependable contritions under pressure of legal action, whether litigious contention is the legitimate good faith quest for legal determination or the mere pretense, for past or future actions, to thwart effective compliance."

In Mitchell v. Hausman, 5 Cir., 261 F.2d 778, 780, we stated:

"We do not think that Hausman's ostrichlike attitude of self-delusion should be accepted as establishing a good faith belief on his part that the Act did not apply to him and his business. 'If he did not know, it was because he did not look, or looking, did not see, or want to see what was so plainly there.' Mitchell v. Raines, 5 Cir., 1956, 238 F.2d 186, 188. The personal belief of the trial judge that an employer will comply with the Act in the future may not be, in the light of the facts, a sufficient reason for denying an injunction. Lenroot v. Kemp, 5 Cir., 1946, 153 F.2d 153."

We think the record before us demonstrates a clear case of a party relying at first entirely on his own erroneous concept of the law respecting coverage, a concept so erroneous that he did not

---

think that we were covered under the act."

2. It is significant that counsel had already filed the abandoned response to the petition for subpoena at least six months before this. Whatever information he gave to counsel and whatever advice he received did not deter him from continuing to violate the law.

even urge it when, two years after the investigation was started, the case came on for trial. The most cursory examination would have disclosed that the courts had held this kind of work not exempt from coverage merely because the work was done for the United States government as early as 1950. Powell v. United States Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017. As to the harbor deepening operation that was undertaken by the respondent here after this suit was filed, there could have been no reasonable doubt about its being a covered activity after Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196, decided by the Supreme Court in 1955. See also Tobin v. Ramey, 5 Cir., 205 F.2d 606; Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334.

The record discloses that there was later a consultation with counsel.

■ We have heretofore commented on the reliance by employers in good faith on the advice of counsel as an element to be considered in these cases. Here no such reliance can be urged as to most of the violations. Moreover such reliance, even in good faith, is not to be considered a safe harbor in every storm. It, of course, can be considered by the trial court. Here, however, even after counsel filed his response to the petition for subpoena it is apparent that there was no good faith reliance on advice from counsel that he was not subject to the act. The history of the actions taken by Blanchard and his counsel during the more than a year of maneuvering following counsel's first appearance on the scene is one of delay and obstruction to the investigation by first a denial of coverage, followed, after passage of time, by admission of coverage when finally the issue was before the court. Counsel's own pleadings denied coverage in the most obvious situations, which denials he abandoned when forced to do so by interrogatories requiring sworn answers and later by the calling of the case for trial. During all of this time Blanch-

ard continued to withhold from his covered employees the overtime wages they were entitled to receive.

Blanchard's action is illustrative of what we have heretofore called an "ostrichlike attitude of self-delusion." His counsel's action in twice setting up defenses and thus obtaining delay and then several months later abandoning them when the "chips were down" evidences much more clearly "mere pretense * * to thwart effective compliance" than "legitimate quest for legal determination." Mitchell v. Hodges, supra.

Such conduct cannot support the finding of the trial court. It required the granting of an injunction under all the circumstances disclosed by this record. Mitchell v. Hausman, supra.

The judgment is reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.