Mulfred S. GATLIN, Talmadge R. Gatlin
and J. Shelby Gatlin, d/b/a Gatlin
Lumber Company, Appellants,

v.

James P. MITCHELL, Secretary of Labor,
United States Department of Labor,
Appellee.

No. 18314.

United States Court of Appeals
Fifth Circuit.

Feb. 15, 1961.

Rehearing Denied April 4, 1961.

O. Winston Cameron, Floyd, Cameron
& Deen, Meridian, Miss., for appellants.

Jacob I. Karro, Atty., Bessie Margolin,
Asst. Sol., Harold C. Nystrom, Acting
Sol., Judah Best, Atty., U. S. Dept. of
Labor, Washington, D. C., Beverley R.
Worrell, Regional Atty., U. S. Dept. of
Labor, Birmingham, Ala., for appellee.

Before RIVES, JONES and WISDOM,
Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment permanently enjoining the appellants from violating the minimum wage, overtime, shipping, and record-keeping provisions of the Fair Labor Standards Act.[1]

The Gatlin partners, father and two sons, are engaged in a logging and lumber business in and near Waynesboro, Mississippi.[2] The evidence covered a period of two years from August 17, 1955 through August 1957. During that period, the Gatlins employed between 70 and 100 men. About half of the lumber which they produced was shipped in interstate commerce. It is stipulated that their employees were covered by the Act except for the employees who were claimed by the Gatlins to be excluded by the forestry exemption of the Act.[3]

The appellants' claims of error fall into three classes:

1. That the district court erred in law and in fact in finding employees Mack Lee, A. N. (Ab) Bell and Ollie Jones to be forestry employees within the meaning of Section 213(a) (15),[4] and that, accordingly, the total number of forestry employees was always within the statutory limit for the application of the forestry exemption;

2. That the district court committed errors of fact concerning violations (a) as to laborers at the planer and sawmill, (b) as to the lumber stackers, and (c) as to the "key" salaried employees;

3. That appellants' operations and violations are not of such a nature as to warrant the issuance of an injunction.

### The Forestry Exemption.

Appellants' principal contention is that Mack Lee, A. N. (Ab) Bell and Ollie Jones were not employed in "forestry or lumbering operations" within the meaning of Section 213(a) (15).[5] Excluding those three employees, it is agreed that during 26 of the 52 pay periods involved, there were 11 forestry employees, and during 22 of such pay periods there were 10 such employees. During the remaining 4 of such pay periods, the number of such employees, including those three, did not exceed the statutory limit of twelve.

The district court found "that the duties performed by Mack Lee, Ollie Jones, and A. N. (Ab) Bell make it necessary to include those employees in the total of the employees engaged in the defendants' forestry or lumbering operations." Lee and Bell did much the same work. They checked the activities of the logging crews who were employees of two small sawmills which cut timber for the Gatlins in DeSoto National Forest. Lee and Bell were there to make sure "that the lumber, that the trees they are cutting are getting to them, and the lumber getting on to Mr. Gatlin." Mr. Lee also supervised the cutting of pulpwood by independent contractors on the Government land. Lee testified on this phase of his work as follows:

> "Q. You make a list of all the pulpwood that leaves the National forest? A. Well, I don't make a list, I just kind of keep up with the load.

> "Q. Well, that is to be sure that the pulpwood that leaves there gets to the place it is supposed to go? A. Where it is supposed to go."

1. Chapter 676, 52 Stat. 1060, Chapter 736, 63 Stat. 910, 29 U.S.C.A. § 201 et seq.

2. Waynesboro is a small town in a rural district of east central Mississippi.

3. "(a) The provisions of sections 206 and 207 of this title shall not apply with respect to * * *. (15) any employee employed in planting or tending trees, cruising, surveying, or felling timber, or in preparing or transporting logs or other forestry products to the mill, processing plant, railroad, or other transportation terminal, if the number of employees employed by his employer in such forestry or lumbering operations does not exceed twelve." Title 29 U.S.C.A. § 213(a) (15).

4. See note 3, *supra*.

5. Note 3, *supra*.

As to Bell, one of the Gatlin sons testified:

"He supervises some of the cutting of the little mills, sort of in the same line as Mr. Lee, and he also keeps a check on pulpwood that leaves the woods to see that we get credit on it, goes to the right places, and any errands or anything that is to be done either from the mill, why, he makes contact from the mill to the little mills, carries word back and forth."

Ollie Jones testified that all that he had seen Bell do was to check on pulpwood.

Ollie Jones was a Deputy Sheriff and had been elected Constable of Beat 4 in Wayne County, Mississippi. The Gatlins hired him shortly after that election. His principal duties were to patrol the Gatlin lands [6] to arrest trespassers, to prevent thefts of timber and lumber, and to protect against forest fires.

▮ Since the employers admit violation of the Act unless they are included in the exemption, the burden is on them to show that they are plainly and unmistakably within its terms and spirit.[7] The restriction of the exemption to employers who employ not exceeding twelve employees in forestry or lumbering operations was intended to make it applicable only to the small *migratory* lumber milling operations peculiar to the Southeast—called "peckerwood mills." "They cut scrap timber that would not be economical for the larger mills to cut * * *. Many of them go out and hire farm boys in the immediate vicinity of the mill * * *. It is an added source of income to these *small-farm people. They are the type of sawmill which is covered by the exemption.*" (Emphasis added.)[8] The language of the exemption should be construed, so far as it reasonably can be, to carry out that intention.

The legislative history makes it quite clear that forest operations up to the time the logs or products enter the sawmill, processing plant, or transportation terminal are encompassed by the language of the exemption.[9] Here, the rationale was that such work can be performed only under favorable weather conditions.[10] The terms of the exemption are carefully phrased to carry out the intention expressed by the legislative history. The employees included within the exemption are those "employed in (1) planting or tending trees, (2) cruising, surveying or felling timber, or (3) in preparing or transporting logs or other forestry products to the mill, processing plant, railroad, or other transportation terminal" (parenthetical numbers supplied). The nouns "trees," "timber," "logs," "other forestry products," trace the life of the tree from its inception to its end and one step toward its conversion into lumber or paper. The verbs correspondingly follow the tree's growth and use. Most of the terms are so clear as not to require discussion. Pulpwood is, of course, a "forestry product," indeed, the most usual one other than logs. We agree with the appellants that the word "cruise" as used in forestry operations means "to inspect forest land for the purpose of estimating the quantity of timber it will yield," [11] and that Ollie Jones was not engaged in "cruising" the timber. Appellants would

6. About 83 acres in cotton and about 50,000 acres in timber land.

7. See Phillips, Inc. v. Walling, 1945, 324 U.S. 490, 498, 65 S.Ct. 807, 89 L.Ed. 1095; Arnold v. Ben Kanowsky, Inc., 1960, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393. See also cases collected in 29 U.S.C.A. § 213, n. 2.

8. Congressman McCombs' remarks in 95 Cong.Rec. 11213 (1949). There was complete unanimity of opinion among the proponents of the exemption that it was intended to benefit these small "peckerwood" mills. See 95 Cong.Rec. 11212, 11223 (1949).

9. See statements of Senator Pepper, one of the Senate-House conferees, explaining the scope of the exemption at 95 Cong.Rec. 14869.

10. See remarks of Congressman Winstead of Mississippi at 95 Cong.Rec. 11211–11212.

11. Webster's New International Dictionary.

have us restrict "tend" to a dictionary illustration of "to cultivate or foster, as a plant." So restricted, "tending" would be almost meaningless in this exemption, for forest trees are not "cultivated" or "fostered" except for an extremely rare pruning. Even a cultivated plant, however, requires protection from insects, depredators and trespassers; and forest trees especially must be protected against trespassers, thieves, and fire. The broader definition of "tend" as "to apply oneself to the care of; to look after; to guard; to watch over" appears to us to be the usual and ordinary sense of "tend" as applied to forest trees, and the sense in which the word is here employed.

Clearly, substantial parts of the activities of Lee and Bell were in the "preparing" and "transporting" of logs and of pulpwood to the mill, processing plant or terminal. Ollie Jones' activities were encompassed by the terminology "tending trees." His relation to the "tending" of trees is much less tenuous than that which the towboat cooks had to the transportation of logs in Woods Lumber Co. v. Tobin, 6 Cir., 1952, 199 F.2d 445, affirming per curiam 20 CCH Labor Cases, Para. 66, 640 (1951).

■ We conclude that appellants have not brought themselves "plainly and unmistakably" within the exemption provision.

### Claimed Errors of Fact.

■ As to the claimed errors of fact concerning violations (a) as to laborers at the planer and sawmill, the district court found: "that during the two-year period from August, 1955, to the time this action was filed in September of 1957, in over 125 instances these defendants failed to pay their employees, pursuant to the overtime provisions of the Act, for hours worked in a workweek in excess of 40 hours. Instead, they paid overtime wages only for time worked in excess of 80 hours in a two-week period. As a matter of fact, such appears to have been the policy consistently followed in defendants' operation. Such practice invariably resulted in employees failing to receive the proper wages for their overtime work." The evidence sustains that finding. So much is practically conceded in appellants' brief, but the conduct is minimized as mere "technical violations of the Act." We do not agree. Clearly, whether so intended or not, the two-week basis operated to the advantage of the Gatlins in those periods in which the employee worked more than 40 hours in one week and less than 40 hours in the other week. The evidence showed that the two-week basis for computing overtime was used as late as the summer of 1959, nearly two years after this action had been instituted.

As to (b), the lumber stackers, the district court found: "that these defendants compensated their stackers on a piece-rate basis only; this basis generally referred to by the witnesses as payment by the truck. These defendants did not commence to keep accurate hours of their lumber stackers until sometime in 1958. Lumber stackers generally worked five or five and one-half days per week with an average workweek of approximately 45 hours and were never paid anything in excess of the contract rate of $5.50 per truck. No 'regular rate' of pay for these employees was established or converted to an hourly rate." The evidence sustains that finding, though the practice had been corrected in advance of trial.

As to (c), the "key" salaried employees, the district court found: "that the defendants' millwright, whose duties consisted of keeping up the sawmill, insofar as its mechanical operation was concerned, ordinarily worked 45 hours per week and occasionally worked in excess of that by working on Sundays. He received only a straight salary of $45 per week. Defendants' payroll records, however, reflected that he consistently worked 8 hours a day, 5 days each week. The oral testimony concerning the actual hours the millwright worked was corroborated by defendants' time-book records, which reflected that he, in certain instances, worked up to 90 and in one instance up to 102 hours during certain two-week payroll periods. Such a practice was also generally true with the

planing machine repairman and the machinist." The evidence sustains this finding. Appellants are not helped by their reference to Walling v. A. H. Belo Corporation, 1942, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716.[12] Here there is no evidence that the employer and employees had agreed on a "specific overtime rate of one and one-half times the regular rate."[13] We need inquire no further since this essential element of a valid "Belo" contract is missing in the case at bar.

Propriety of Injunctive Relief.

■ The district court found:

"In considering whether or not such practices and violations on the part of these defendants necessitate the issuance of an injunction, the evidence reflects that there have been at least three investigations by the Wage and Hour Division of the Department of Labor of the defendants' operations. Upon at least one previous occasion, in 1954 or early in 1955, these defendants were advised that they were violating the overtime and record-keeping provisions of the Act and agreed to correct the violations at that time. The defendants' violations as herein set out have been persistent and continuous, and it is the conclusion of this Court that such persistent and continuing violations make it necessary and appropriate for this Court to enjoin these defendants from further violations of the Fair Labor Standards Act. See Lenroot v. Kemp [5 Cir.], 153 F.2d 153, Mitchell v. Raines [5 Cir.], 238 F.2d 186, and Mitchell v. Hausman [5 Cir.], 261 F.2d 778."

Clearly, it was not an abuse of discretion for the district court to grant an injunction. Mitchell v. Hausman, 5 Cir., 1958, 261 F.2d 778; Mitchell v. Blanchard, 5 Cir., 1959, 272 F.2d 574.

The judgment was right, and it is

Affirmed.

JONES, Circuit Judge (dissenting in part).

I cannot join in the determination by the majority that the evidence sustains the finding that Mack Lee, Ollie Jones and A. N. Bell were "employed in planting or tending trees, cruising, surveying, or felling timber, or in preparing or transporting logs or other forestry products to the mill." 29 U.S.C.A. § 213(a)(15). I think the evidence shows that they were not so employed. Therefore I dissent from the affirmance of the district court's judgment in so far as it relates to the logging crew. I am in agreement with the rest of the opinion of the majority.

Rehearing denied; JONES, J., dissenting.

12. Substantially codified as 29 U.S.C.A. 207(e).

13. Mitchell v. Adams, 5 Cir., 1956. 230 F. 2d 527, 530.