303 F.2d 811
 Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Appellant,
v.
Earl R. COCKRELL and Carra Bell Cockrell, doing business as Cockrell Banana Company, Appellees.
 No. 18983.
 United States Court of Appeals Fifth Circuit.
 June 22, 1962.
 
 Bessie Margolin, Morton Liftin, Asst. Solicitor, Dept. of Labor, Isabelle R. Cappello, Atty., Dept. of Labor, Washington, D. C., Charles Donahue, Solicitor of Labor, Jacob I. Karro, Attorneys, United States Department of Labor, Washington, D. C., Beverley R. Worrell, Regional Attorney, for appellant.
 W. P. Mitchell, R. N. McNutt, Mitchell, McNutt & Bush, Tupelo, Miss., for appellees.
 Before BROWN and WISDOM, Circuit Judges, and DE VANE, District Judge.
 WISDOM, Circuit Judge.
 
 
 1
 The Secretary of Labor brought this suit to enjoin Earl R. Cockrell and Carra Bell Cockrell, doing business as the Cockrell Banana Company, from further violations of the Fair Labor Standards Act. The Secretary alleged that the defendants-appellees had violated the Act's minimum-wage, overtime, and record-keeping regulations, 29 U.S.C.A. §§ 206, 207 and 211. The district court found that the Cockrells had violated the Act but declined to issue an injunction as prayed for by the Secretary. We vacate the order below and remand the case with instructions that the injunction be issued.
 
 
 2
 The Wage and Hour Division of the Department of Labor first investigated the Cockrell Banana Company in 1953. It conducted a second investigation in February 1958 and a third in September 1958. Each time it informed the defendants that it had found violations of the minimum-wage, overtime, and record-keeping requirements of the Fair Labor Standards Act. Each time the defendants indicated that they would comply in the future. At no time have they denied that they are subject to the regulations imposed by this Act. In this proceeding the Cockrells acknowledge that their practices prior to 1958 were unlawful, but they assert that since the third investigation there have been no further violations. At that time the defendants instituted a system under which time sheets were distributed to their employees and each employee was directed to record his hours worked each day.[1] The employees signed their time sheets and turned them in each week. On the time sheet immediately preceding the space for the worker's signature was printed the statement: "I hereby certify that I have entered above the correct time worked and have received full payment as shown. I am due no back pay." Various employees testified that they filled out these sheets according to what they were being paid without any attempt to reflect the hours actually worked. Two employees stated that the reason for this practice was that they could not get paid for the hours actually worked. One employee explained that once when he had turned in a record stating his true number of hours it was "kicked back" on him. He said also that when he had been given a pay raise the number of hours which he recorded was increased, although there was no change in the number of hours he worked. One of the time sheets introduced showed daily hours adding up to 56 hours for the week, but the weekly total written in, on which the employee's pay was based, was only 52. Several employees testified that often they had worked a greater number of hours than the hours recorded without receiving any additional pay. The appellees did not dispute the accuracy of this testimony.[2]
 
 
 3
 On the basis of this evidence the district court concluded:
 
 
 4
 "I am convinced and find as a fact that defendants have violated the minimum wage, record keeping, and overtime provisions of the Act. And, as a matter of law, the defendants cannot escape their ownership and managerial responsibility for compliance with these provisions of the Act. However, I am not sufficiently satisfied, on the record now before the Court, that these violations have been of an intentional or wilful character such as would justify, at this time, the issuance of an injunction as prayed for in the complaint."
 
 
 5
 The court ordered the case continued for six months for the limited purpose of permitting reconsideration "solely" upon evidence of new violations which might be discovered within the six months period.
 
 
 6
 The decision whether an injunction should issue to restrain an employer from future violations of the Fair Labor Standards Act lies initially in the discretion of the district court. That discretion, however, is subject to certain firm limitations. Some of the factors to be considered are "the employer's previous actions of non-compliance or litigation, the moral and business responsibility of the employer, the extent to which promises of future compliance are something more than empty, idle words unmatched by the institution of effectual corrective procedures, or are undependable contritions under pressure of legal action, whether litigious contention is the legitimate good faith quest for legal determination or the mere pretense, for past or future actions, to thwart effective compliance." When the factors that "determine the probability of future compliance" have not been properly evaluated by the trial court, this Court will not be "slow to act by ordering the issuance of an injunction." Mitchell v. Hodges Contracting Company, 5 Cir., 1956, 238 F.2d 380, 381. In a growing line of cases in this Circuit, when an employer has committed a clear violation of the Act without valid excuse or explanation this Court has ruled that an injunction should be issued. Mitchell (Goldberg) v. Pidcock, 5 Cir., 1962, 299 F.2d 281; Mitchell (Goldberg) v. Ballenger Paving Co., 5 Cir., 1962, 299 F.2d 297; Mitchell v. Jax Beer Distributors of Beaumont, Inc., 5 Cir., 1961, 290 F.2d 24; Mitchell v. Blanchard, 5 Cir., 1959, 272 F.2d 574; Mitchell v. Hausman, 5 Cir., 1958, 261 F.2d 778; Mitchell v. Raines, 5 Cir., 1956, 238 F.2d 186; Lenroot v. Kemp, 5 Cir., 1946, 153 F.2d 153. See also Goldberg v. Thompson, 5 Cir., 1961, 287 F.2d 241.
 
 
 7
 Issuance of an injunction in cases such as these does not subject an employer to any penalty for his past violations of the law. It merely says: in the future do what the law requires you to do. The injunction shifts the responsibility for compliance onto the employer's shoulders. Unlike most statutes regulating conduct, the Fair Labor Standards Act does not carry any immediate sanction. In effect it gives each employer one free offense: on proof of violation he is liable at most for repayment of the wages that he originally should have paid his employees, to the extent that the unpaid wages can be proven. This rule may be justified on the basis of avoiding punishment of those who are ignorant of the law or do not believe that it applies to them; but no law can be effectively enforced if individuals are allowed to make repeated violations of it with impunity. One unexplained offense is enough. The Wage and Hour Division cannot reasonably be charged with the responsibility of checking back on past violators to make sure that they are obeying the laws. Fairness and economy of administrative effort both dictate that after an employer has once violated the Act he should bear his own responsibility for the future.
 
 
 8
 In this case the evidence is unequivocal that the employer knew that it was subject to the Act and was repeatedly advised that it was violating the Act, but nevertheless persisted in its unlawful practices. When the Secretary finally sued for judicial enforcement, the defendants elected to litigate, although at the trial they introduced no evidence to controvert the Secretary's evidence of violations and offered no legal theory in justification or extenuation. It appeared at the trial that as late as April 2, 1960, eleven months after the complaint was filed and nineteen months after the third investigation, the Cockrells were still not keeping records on all the worktime of the employees and were still crediting worktime arbitrarily. The district judge had no alternative to finding that the defendants violated the Act. In these circumstances we hold that the district court exceeded the bounds of judicial discretion in declining to issue an injunction against the defendants restraining them from further violations of the Act. The need for injunctive relief is to be measured by the employer's approach and attitude as demonstrated by his previous actions of non-compliance, not by his pious promises to comply in the future under the threat of judicial compulsion.
 
 
 9
 The order of the district court is vacated and the case remanded with instructions that the district court grant the injunction as prayed for.
 
 
 
 Notes:
 
 
 [1]
 As the appellees acknowledge, the Act places on the employer the obligation of keeping accurate records of the hours worked by his employees, and the employer cannot transfer his statutory duty to his employees. 29 U.S.C.A. § 211(c). Mitchell v. Reynolds, W.D.Ark., 1954, 125 F.Supp. 337, 340. There the court stated: "while there is nothing to prevent an employer from delegating to his employees the duty of keeping a record of their hours, the employer does so at his peril. He cannot escape the record keeping provisions of the Act by delegating that duty to his employees."
 
 
 [2]
 The only substantial challenge made by the appellees to the evidence introduced to show their violations of the Act was that the testimony of employees was vague and indefinite as to the number of hours actually worked in excess of those recorded on the weekly time sheets. The Supreme Court has held, however, that such evidence may be accepted to prove damages, Anderson v. Mt. Clemens Pottery Company, 1946, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, and certainly it follows that such evidence is also acceptable for the narrower purpose of showing a violation of the Act