**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellee,**

v.

**R. E. LEE ELECTRIC COMPANY, Inc., a Corporation, Appellant.**

**No. 9322.**

United States Court of Appeals Fourth Circuit.

Argued April 20, 1964.

Decided Dec. 14, 1964.

John L. Kilcullen, Washington, D. C., for appellant.

Robert E. Nagle, Atty., United States Department of Labor (Charles Donahue, Solicitor of Labor, Bessie Margolin, Associate Solicitor, Sylvia S. Ellison, Chief Trial Attorney, and Beate Bloch, United States Department of Labor, on brief), for appellee.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and CRAVEN, District Judge.

BOREMAN, Circuit Judge.

The Secretary of Labor seeks to restrain R. E. Lee Electric Company (hereinafter Lee Co. or defendant) from violating the overtime and record-keeping requirements of the Fair Labor Standards Act (herein referred to as the Act), 29 U.S.C.A. § 201 et seq., and to restrain Lee Co. from continuing to withhold unpaid overtime compensation alleged to be due certain of its employees by virtue of the pertinent provisions of the Act. Defendant conceded that some employees were employed for more than forty hours per week (29 U.S.C.A. § 207(a)) with-

out payment for overtime, but contended that they did not come within the provisions of the Act since they were not engaged "in commerce" or "in the production of goods for commerce." The District Court found that defendant had violated the Act and permanently enjoined it and its officers and agents from further violations of the Act and from withholding from forty employees unpaid compensation totaling $2,124.80.

Lee Co. is an electrical contractor in Fairfax County, Virginia, which employs fifty-five to sixty men at hourly rates which range from $2.25 to $4.80. In the years 1960 and 1961 defendant performed work under several contracts with different government agencies. All the contracts in question contained extensive labor specifications governing minimum wages, time and one-half overtime compensation for all hours worked in excess of eight hours a day and other conditions of employment required by the Walsh-Healey Act, the Eight Hour Law and the Davis-Bacon Act, but they contained no reference to any provisions of the Fair Labor Standards Act.

The present dispute involves work performed under these contracts at ten government operations variously located in the District of Columbia, Maryland, Virginia and Pennsylvania. Of these projects some were federal office buildings, some were military installations and one was a building constructed for use as a United States Post Office. Substantially all of the facts were stipulated or established through discovery procedures. R. E. Lee, president of Lee Co., alone testified for defendant.

In Building T–7, at Gravelly Point, Virginia, defendant installed electric wiring for window air conditioning units and installed the units. This building houses military and other governmental agencies: A branch of the General Services Administration; Headquarters, Military District of Washington; Headquarters, Army Material Command; Directorate for Armed Forces Information and Education; Office of the Chief of Engineers, Department of the Army; Armed Services Explosive Weapons Board; and the Defense Transportation Material Services Agency. It is undisputed that these agencies typed, printed and otherwise handled letters, reports, memoranda, contracts and other written materials that were sent to or received from points in other states; and that they made or received long distance telephone calls, handled telegrams and other government business, sent to or received from points in other states.

At Washington, D. C., the defendant installed a fire alarm system in the main Treasury Building. This building houses ten government agencies: The Bureau of Accounts; Office of the Comptroller of the Currency; Office of the General Counsel; Office of Administrative Services; Office of International Finance; Bureau of the Mint; Bureau of Public Debt; U. S. Secret Service; Office of the Secretary of the Treasury and Office of the Treasurer of the United States. Each of these agencies receives and makes interstate telephone calls and carries on interstate correspondence on a daily basis. In addition, several of the agencies regularly handle and work on numerous circulars, bulletins, directives and other printed materials which are distributed throughout the United States. Also, the Office of the Treasurer receives and mails checks daily.

At Fort Meade, Maryland, defendant installed the primary power for window air conditioning units and installed the units in Building T–2842. This building houses the 8769 U. S. Army Special Support Unit which prepares and sends reports (some classified) and correspondence in interstate mail on a regular basis. Also, it makes and receives interstate telephone calls daily.

At Andrews Air Force Base, Camp Springs, Maryland, Lee Co. installed electrical outlets in the hangars which housed aircraft provided for use of the President. These outlets were used by mechanics to operate machines to test equipment taken from the planes. The planes frequently fly across state lines, land in other states and return.

At the Naval Air Station, Patuxent River, Maryland, Lee Co. installed electrical wiring in a hangar. The electricity provided by the wiring was used in testing the military planes. Defendant admitted that interstate flights take off and land at this base and men, materials and mail moving from one state to another pass through it.

At the Letterkenny Ordnance Depot, Chambersburg, Pennsylvania, defendant replaced approximately one hundred poles used to carry electric power and telephone lines and transferred these lines from old to new poles. The electricity from these lines was used for lighting repair shops and for operating power tools used in repairing and modernizing motor vehicles and tanks used by the Army. The telephone lines connect the base with outside lines which lead to all parts of the world.

At Vint Hill Antenna Farm, Warrenton, Virginia, Lee Co. employees were employed in the erection of radio towers. The work consisted of mounting steel towers on top of existing concrete bases and stringing new antenna wires. While the exact function of these towers is not fully disclosed for security reasons, they are apparently used to transmit and receive radio messages, many of which cross state lines.

At Fort McNair, Washington, D. C., defendant's employees installed electrical outlets for some classrooms and put in a post telephone circuit. The telephone circuit was connected with outside lines to provide facilities for interstate communication by the base with points outside.

At Fort Belvoir, Virginia, defendant installed a primary switching station. From this it ran primary electric current to various locations on the base and installed transformers or connected existing transformers at these locations. Some of the wires led to the officers' quarters, enlisted men's quarters and officers' club. The current also provided light for railroad tracks, streets and roads over which interstate shipments of materials and supplies were transported, as well as power to operate machines used to modernize and repair army equipment.

At Herndon, Virginia, under a subcontract, defendant's employees performed all the electrical work in a new building being erected. The building was later leased to the United States Post Office Department for use as a post office where interstate mail and parcel post are received and distributed.

■■ It is well recognized that Congress did not make the coverage of the Fair Labor Standards Act coextensive with its power to regulate commerce, but intended to leave local activity to state regulation. Mitchell v. H. B. Zachry Co., 362 U.S. 310, 314, 80 S.Ct. 739, 4 L.Ed.2d 753 (1960); A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942); Wirtz v. Modern Trashmoval, Inc., 323 F.2d 451, 456 (4 Cir. 1963). However, three employee situations were clearly intended to be covered by the Act: Employees engaged in commerce, those engaged in the production of goods for commerce in a direct sense, and those engaged in any closely related process or occupation directly essential to the production of goods for commerce. See Mitchell v. H. B. Zachry Co., supra; Wirtz v. Modern Trashmoval, Inc., supra; Goldberg v. Barger Const. Co., 210 F.Supp. 752 (W.D. N.C. 1962). The Supreme Court has held that " * * Congress deemed the activities of the individual employees, not those of the employer, the controlling factor in determining the proper application of the Act." Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 213, 79 S.Ct. 260, 265, 3 L.Ed.2d 243 (1959). This court has held: "The activities of the employee, not those of the employer, are decisive on the question of the Act's coverage and the decision is governed by practical considerations rather than technical conceptions." (See Wirtz v. Modern Trashmoval, Inc., 1963, 323 F.2d 451, at pages 456–457, and cases there cited.)

Pertinent provisions of the Act, as amended in 1949, are set forth below.[1]

*Projects: Building T–7, Building T–2842, Treasury Building*

The Secretary contends as to the first three of the above projects, Building T–7, Building T–2842 and the Treasury Building, the government employees in the buildings were engaged in the "production of goods for commerce" and when defendant's employees installed the air conditioners and fire alarm system, they were engaged in an occupation "closely related" and "directly essential" to the work performed by the government employees.

[3] Assuming without deciding that the government employees are engaged in the production of goods for commerce, after careful consideration of the record we do not believe that the installation of a fire alarm system and air conditioners in buildings in which the personnel are engaged in the production of goods for commerce constitutes activity "closely related" and "directly essential" to the production of goods for commerce as those terms are used in Section 3(j) of the Act. 29 U.S.C.A. § 203(j).

In this category of employment Congress did not intend to include all activities which only remotely affect commerce. To distinguish between purely local activities and those intended to be covered by the Act, Congress inserted in the original statute the word "necessary." The courts construed the word "necessary" as including activities which Congress did not intend to be covered and the statute was amended in 1949 by deleting the word "necessary" and inserting in lieu thereof the words "closely related" and "directly essential." Although the legislative history of the amendment is conflicting in some respects, it is clear that these amending words were intended to place some restraint on the Act's coverage. Mitchell v. H. B. Zachry Co., 362 U.S. 310, 317, 80 S.Ct. 739 (1960). The reason for this restriction is stated in Zachry at page 316, 80 S.Ct. at page 744:

"* * * Furthest removed from 'commerce' is employment not 'in' production 'for' commerce but in an activity which is only 'related' to such production. In applying this provision, we have necessarily borne in mind that it is furthest removed in the scheme of the statute from the hub of the national interest in 'commerce' upon which a limited displacement of state power is predicated."

The Secretary urges that A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S. Ct. 1116 (1942), cited with approval in Zachry, should control here. In Kirschbaum the Court held the Act applicable to those employees engaged as elevator operators, watchmen, porters, engineers and carpenters in the maintenance and operation of a building a portion of which was tenanted by a manufacturing concern which was actively and directly engaged in the production of goods for interstate commerce. Their services were *necessary* to the continuing and uninter-

---

1. 29 U.S.C.A.

"§ 203. Definitions

"As used in this chapter—

*    *    *    *    *

"(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."

*    *    *    *    *

"(i) 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State."

rupted maintenance and operation of the building and to that portion thereof in which the production of goods for commerce was carried on. It is contended that the rule of law in that case applies to any employees engaged in the maintenance, repair and improvement of buildings in which production of goods for commerce is carried on, and as the defendant's employees in the present case repaired or improved such buildings they come within the rule. However, Mr. Justice Frankfurter pointed out in the Zachry case, supra, the mere fact that employees are engaged in similar occupations does not mean that the Act will apply in all cases. At page 315 of that opinion in 362 U.S., at page 743 of 80 S.Ct., he states:

"* * * No niceties in phrasing or formula of words could do service for judgment, could dispense with painstaking appraisal of all the varied elements in the different situations presented by successive cases in light of the purpose of Congress to limit coverage short of the exercise by it of its full power under the Commerce Clause."

The present situation is clearly distinguishable from that in Kirschbaum.

A case which is closer to our fact situation is Martino v. Mich. Window Cleaning Co., 327 U.S. 173, 66 S.Ct. 379, 90 L.Ed. 603 (1946). There the defendant was engaged in washing windows, painting and similar maintenance work under contracts with various building occupants. For the most part the buildings, in which the work was performed, were used for production of goods for commerce. Following Kirschbaum the Court held that the services, if rendered by employees of the building in which the goods were produced, would come under the Act and that the defendant's employees were not to be excluded merely because they performed the same work under independent contracts. However, there was strong indication of congressional disapproval of Martino and approval of Kirschbaum when the Act was amended

in 1949 by inserting the words "closely related" and "directly essential." Some restraint on coverage was clearly intended by the Congress. See discussion by Mr. Justice Frankfurter in Mitchell v. H. B. Zachry Co., 362 U.S. 310, at pages 317, 318, 80 S.Ct. 739.

In Wirtz v. Modern Trashmoval, Inc., 323 F.2d 451 (1963), at page 460, this court stated:

"Careful examination of the cases convinces us that two factors, among others, which are vital in holding an employee's employment within the coverage of the Act, are the degree of 'remoteness' of his activities from production for commerce and the presense or absense of a 'dedication' to production for commerce. * * *"

There we held that the employees of a company engaged in removing and disposing of trash in a local geographic area were not covered by the Act even though they collected trash from the premises of several customers who were engaged in the production of goods for commerce.

The "lack of dedication to production" in Modern Trashmoval was apparent from the relationship which existed between Modern and its customers. There, services by defendant's employees were rendered on the same terms to anyone in the geographic area and the activities of those served were not materially related to the work performed by the Trashmoval employees. The same lack of dedication to production for commerce is present in the instant case. Lee Company performs contracts with various customers in a limited geographic area. The time required to complete the contracts varied with the nature of the job to be done. The degree of remoteness from the channel of commerce of the work performed by defendant's employees and the complete lack of their dedication to production of goods for commerce lead to the conclusion that the work performed on Building T-7, Building T-2842 and the main Treasury Building was not within the contemplation of the Act's coverage.

692

*Projects: Andrews Air Force Base, Patuxent Naval Air Station, Letterkenny Ordnance Depot, Vint Hill Antenna Farm, Fort Belvoir, Fort McNair, Post Office at Herndon, Virginia*

The Secretary contends that the six military bases, Andrews Air Force Base, Patuxent Naval Air Station, Letterkenny Ordnance Depot, Vint Hill Antenna Farm, Fort Belvoir and Fort McNair and the Post Office at Herndon, Virginia, were instrumentalities of commerce and that defendant's employees were directly engaged "in commerce" while working on these facilities. Defendant contends that these military bases are instrumentalities of war, not commerce, and therefore not intended to be covered by the Act. Defendant asserts that it was unaware the building at Herndon was to be used as a Post Office since it was not being constructed by the Government.

Defendant's arguments must fail. The foundation for the Secretary's claim was laid in Powell v. United States Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017 (1950), in which the Supreme Court broadly interpreted the definition of "commerce" as contained in the Act, stating at page 512, 70 S.Ct. at page 763:

"This definition is an exercise by Congress of its constitutional power 'To regulate Commerce with foreign Nations, and among the several States, * * *.' * * * Such power has been held repeatedly to include the power to regulate interstate shipments or transportation as such, and not merely to regulate shipments or transportation of articles that are intended for sale, exchange or other trading activities.

"Congress could have expressly exempted from the Act employees engaged in producing goods for interstate transportation not leading to a sale or exchange. Congress also could have exempted employees engaged in producing munitions for use by the United States in war, rather than for sale or exchange by

it. Congress might even have exempted all employees producing goods in any Government-owned plants. However, Congress stated no such exemptions. On the contrary, Congress included, by express definition of terms, employees engaged in the production of goods for interstate *transportation.*"

█ █ In 1958 the Fifth Circuit, in construing Powell, held that a military air base from which interstate flights took off and landed was an instrumentality of commerce even though it was a facility designed for military purposes. Mitchell v. Empire Gas Engineering Co., 256 F.2d 781. The Supreme Court in Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 79 S.Ct. 260 (1959), affirmed the view taken by the Fifth Circuit in the Empire Gas Engineering case. See also, Mitchell v. Ballenger Paving Co., 299 F.2d 297 (5 Cir. 1962); Mitchell v. Owen, 292 F.2d 71 (6 Cir. 1961); Goldberg v. Nolla, Galib & Cia, 291 F.2d 371 (1 Cir. 1961); Goldberg v. W. Harley Miller, Inc., 197 F.Supp. 509 (N.D.W.Va.1961). Under the language of Powell, if the instrumentality or facility is used for "transportation, transmission or communication" among the states, then it is an instrumentality of commerce although entirely owned and operated by the Government. To determine whether or not activities of an employee which relate to interstate instrumentalities are "commerce" within the meaning of the Act, the test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it rather than isolated local activity. Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 212, 79 S.Ct. 260 (1960); Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 429, 75 S.Ct. 860, 99 L.Ed. 1196 (1955).

█ There can be no doubt that Andrews Air Force Base and the Patuxent Naval Air Station are instrumentalities of commerce. Mitchell v. Lublin, McGaughy & Associates, supra. It is un-

disputed that interstate flights take off and land at these bases and men, materials and mail move through them to other states. These facts were sufficient in the Lublin case to persuade the Court to hold the military air bases instrumentalities of commerce. We conclude that the work performed by defendant's employees was directly and vitally related to the functioning of these bases. Electricity used to operate power-driven equipment to test the operating parts of an aircraft is essential to and plays a vital role in the functioning of the aircraft. It is definitely as essential as plans and specifications used for constructing and repairing an interstate instrumentality. See the Lublin case, 358 U.S. 207, 79 S.Ct. 260.

The radio towers at Vint Hill and the telephone systems installed at Fort McNair and repaired at Letterkenny are instrumentalities of interstate commerce as all are used to "transmit" and "communicate" from one state to another. In erecting the radio towers and stringing the antenna wires at Vint Hill, replacing the distribution poles which carried the electric and telephone lines at Letterkenny and installing the telephone circuit at Fort McNair, the defendant's employees were working directly on the interstate instrumentalities themselves. Such work is vitally related to the very existence of the instrumentalities of commerce and has been held to be covered by the Act. Goldberg v. Five Boro Const. Corp., 291 F.2d 371 (1 Cir. 1961); Mitchell v. Hodges Contracting Co., 238 F.2d 380 (5 Cir. 1956); Goldberg v. Nello L. Teer Co., 208 F.Supp. 552 (M.D.N.C. 1962); Mitchell v. Hildebrand, 181 F. Supp. 154 (D.C.Conn.1960); Mitchell v. Southwest Engineering Co., 170 F.Supp. 310 (W.D.Mo.1959), reversed in part on a different point, 271 F.2d 427 (8 Cir. 1959).

At Fort Belvoir the defendant's employees installed the primary electrical distribution system which supplied power for operating machines used to modernize and repair army equipment and for the lighting of railroad tracks, streets and roads used for the interstate transportation of goods and persons. While the railroad tracks, streets and roads are clearly instrumentalities of commerce, Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656 (1942), the work performed was not directly done on one of these instrumentalities. However, at this particular facility, adequate lighting is essential to the free and safe movement of the trucks and automobiles upon the highway and to the movement of trains upon the tracks. As such it is vital to the proper functioning of these instrumentalities.

Defendant does not argue that the Post Office at Herndon, Virginia, is not an instrumentality of commerce. It recognizes the effect of the decision in Mitchell v. H. B. Zachry Co., 362 U.S. 310, 80 S.Ct. 739 (1959), and Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860 (1955), and does not base its argument on the fact that the building erected was new construction and not covered by the Act. Rather, defendant maintains that it performed the electrical work as a subcontractor without knowledge that the building was to be used as a Post Office. The only evidence supporting this argument was the testimony of the president of Lee Co. that *he* did not have personal knowledge of the intended use of the building. However, there was no evidence that the defendant's employees who actually performed the work were not aware of the purpose for which the building was being constructed and it would be more than strange if these employees could work on a structure designed as a Post Office without konwledge of its intended use. In considering the question of knowledge, the court in Mitchell v. Owen, 292 F.2d 71 (6 Cir. 1961), stated at page 77:

" * * * A mere disclaimer of actual knowledge of the goods ultimate use will not, alone, insulate the producer against application of the Act's provisions. Nor is it possible to avoid their application by ignoring the circumstances surrounding

694

the production or by claiming ignorance of the nature of his business."

Applying the established principle that the coverage of the Act is determined by the actual work done by the employees, we conclude that the work on the Post Office building came within such coverage.

Affirmed in part, reversed in part and remanded.