W. Willard **WIRTZ**, Secretary of Labor, U. S. Department of Labor, Appellant,

v.

**B. B. SAXON COMPANY, Inc.,** Appellee.

No. 21414.

United States Court of Appeals Fifth Circuit.

Aug. 16, 1966.

Rehearing Denied Oct. 4, 1966.

458

Bessie Margolin, Associate Sol., William Fauver, Atty., Charles Donahue, Sol., Robert E. Nagle, Solomon Robinson, Attys., U. S. Dept. of Labor, Washington, D. C., for appellant.

Walter J. Smith, Fort Walton Beach, Fla., for appellee.

Before JONES and BELL, Circuit Judges, and JOHNSON, District Judge.

JONES, Circuit Judge:

The Secretary of Labor, the appellant here, brought an action under Section 17 of the Fair Labor Standards Act 29 U.S. C.A. § 201 et seq. against the appellee, B. B. Saxon Company. It is a Florida corporation engaging in maintenance and service work under contracts with the United States Government at military bases in five states. Two of the bases, Craig Air Force Base in Alabama and Robbins Air Force Base in Georgia, are involved in this action, brought to enforce the minimum wage and overtime provisions of the Act. There is no question but that the requirements of the Act were not met. This appeal relates to the issues of coverage and the appropriate remedy.

All of the employees at Robbins Air Force Base involved in this litigation were engaged in the repair and maintenance of vehicles assigned to the base motor pool or sent to Robbins for repair. The district court found these persons covered by the Act. The employees at Craig Air Force Base may be categorized in nine groups, three of which were found covered.

The first group includes persons who transported fuel from bulk storage tanks to the airplanes, where the fuel was put into the planes by Air Force personnel. The district court found this group to be covered by the Act. The second group encompassed those who repaired and maintained the base vehicles. Their duties were about the same as those of the Robbins employees. They were found to be covered.

Civilian drivers at the base motor pool comprised the third class. Transportation, which included a flightline taxi

service, was provided continuously. This was the final group which the district court found to be covered by the Act.

The employees in the fourth category, found not to be covered by the Act, maintained the pavement and grounds of the Air Base. In addition to street repair, duties of this class included maintaining the runways, taxiways, parking aprons, warm-up and holding pads, and the aircraft wash racks on the base. Part of the job was the daily sweeping of the runways and taxiways so as to reduce the likelihood of foreign objects being sucked into the jet engines.

The fifth group was composed of the base custodians and janitors. They cleaned the base office buildings and other structures on the base, including the gym, commissary, chapel, library, bank, and post office. They were found not to be covered.

The base water and sewage facilities were operated and maintained by the sixth category, found to be without the coverage of the Act.

The employees in the seventh class were engaged in control of insects and rodents throughout the base. They were found not to be in interstate commerce and so were not covered.

The eighth group was composed of persons who operated the base housing administration office. This office administered the allocation of the housing on the base, including assignment and termination of occupancy, and collection of rents. The housing included transient quarters and the bachelor officers' quarters. The maid service for the last two types of housing was supervised by the housing office. The lower court found these employees were not covered by the Act.

The final classification contains employees who kept time records and prepared payrolls for the other workers. They were located both at Craig Field and at the company's Florida office. They were found not to be covered.

 Both the maximum hours provision and the minimum wage provision of the Fair Labor Standards Act apply to employees who are "engaged in commerce or in the production of goods for commerce."[1] For purposes of the Fair Labor Standards Act, " 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C.A. § 203(b). " 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." 29 U.S.C.A. § 203(j).

 It is apparent that the category of employees engaged in the production of goods for commerce is broader than the class of employees engaged in commerce, not only in the number of people who might be expected to be within it, but in the closeness of the relationship between the person and the activity requisite for inclusion. For one to be engaged in the production of goods for commerce within this Act, he need only be engaged in a closely related process or occupation directly essential to production, whereas to be in commerce, one

---

1. (a) Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce wages at the following rates—29 U.S.C.A. § 206.

Maximum hours

(a) (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any work-week is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed; * * *. 29 U.S.C.A. § 207.

must be in commerce itself. This distinction has been recognized by the courts. "[T]he test of whether one is in commerce is obviously more exacting than the test of whether his occupation is necessary to production for commerce." Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118.[2] Thus, cases dealing with employees found to be engaged in the production of goods for commerce are of little aid in determining whether other employees are engaged in commerce. The test in the latter case is that one is engaged in commerce only if his activities are "so closely related to such commerce as to be in practice and in legal contemplation a part of it."

The test is that used in construction of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., prior to amendment in 1939. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656. See also McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Boutell v. Walling, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786; Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243.

■■ There is no question but that the two Air Force bases are instrumentalities of commerce to the extent that interstate flights take off and land. Mitchell v. Lublin, McGaughy & Associates, supra; Powell v. United States Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017. The general facilities of the structures on the bases such as the gymnasium, library, and chapel and the residential and recreational areas, cannot be said to be in commerce unless it be by virtue of their association with the function of the base as an airfield. We find no case speaking directly to this point. The reasoning in some cases seems to assume either that an entire base is or is not an instrumentality, but the assumption is not always in the same direction. We find most persuasive the view that the various parts of a huge, sprawling Air Force base must be considered

individually. There is, in our view, no more reason to hold that an entire military installation is engaged in commerce simply because a part of the land included within the base is used for that purpose than to hold that an entire town is engaged in commerce because a portion of the town's businesses is. This reasoning is reflected in Wirtz v. R. E. Lee Elect. Co., 4th Cir. 1964, 339 F.2d 686, where employees doing electrical installation work at several Government bases were found to be engaged in commerce. The Court did not find the employees were engaged in commerce because they were employed on military bases which were, in part, engaged in commerce, but found it necessary to investigate the relationship between the work of the individual employees to the interstate-commerce function of the base. So, too, must we do here.

■■ There can be no question that the employees who hauled airplane fuel to the planes were engaged in commerce within the statute and the applicable judicial precedents. It has been held that the construction of fuel tanks was in commerce. Mitchell v. Empire Gas Engineering Co., 5th Cir. 1958, 256 F.2d 781. The operation of the tanks is also in commerce. The district court will be affirmed in this regard.

■ Those engaged in repair of motor vehicles, at both bases, were entitled to the protection of the Act. The vehicles were necessary to the functioning of the bases as instrumentalities of commerce, indeed, many of the vehicles performed functions essential to moving and servicing the airplanes themselves. As the vehicles were so closely related to commerce as to be a part of it, so was their repair and maintenance. Boutell v. Walling, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786.

■ The same reasoning applies to the drivers at the motor pool. The transportation they provided, particularly at the flight line, was essential to the opera-

2. The statutory language required one to be engaged in "any process or occupation necessary to the production" prior to amendment in 1949.

**462**

tion of the base. The lower court will be affirmed as to these persons.

 There can be no question that runways, taxiways, and warm-up pads, and the like are so closely related to the interstate flights as to be a part of the commerce. The employees engaged in maintaining these facilities are within the Act. The district court must be reversed as to employees in this category. Overstreet v. North Shore Corp., 318 U. S. 125, 63 S.Ct. 494, 87 L.Ed. 656.

 Providing janitorial service in a building which does not house an instrumentality of commerce is not within the clause of the Act relating to employees engaged in commerce. See 10 East 40th Street Building, Inc. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, reh. den. 326 U.S. 686, 90 L.Ed. 402; Tobin v. Girard Properties, 5 Cir. 1953, 206 F.2d 524. This statement applies to most of the custodial personnel. A few were engaged in cleaning such buildings as the bank and post office, which did house instrumentalities of interstate commerce, not because they were on the base, but because of the nature of their activities. It has been held that one who does no more than clean a bank is not so closely related to the commerce of the bank as to be a part of it. Rosenberg v. Semeria, 9th Cir. 1943, 137 F.2d 742. We agree; the trial court must be affirmed as to this class of employees.

 It may be that providing water and sewage service to instrumentalities of commerce is, itself, commerce where the water and sewage are essential to the operation of the instrumentalities. In this case, the services appear to be provided to the base generally, and primarily to the living and recreational areas. We cannot find that the water and sewage here are so closely related to the operation of the airfield as to be a part of it. The district court must be affirmed. See Mitchell v. H. B. Zachry Co., 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753.

 We can see no relationship between the control of insects and rodents and the conduct of interstate commerce. The district court is affirmed.

 Operation of the permanent, residential housing establishment on the base would appear to be as local an activity as can be imagined. If one who serves meals to those working on an instrumentality of commerce is not covered, as in McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538, we feel that one who administers their housing is not. The district court will be affirmed as to this group.

 The people engaged in keeping records and payrolls for the different classes of Saxon employees were not engaged in commerce. It must be remembered that it is the activities of the individual employees which determines the question, not the activities of the organization as a whole. A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. While some of the employees whose records were kept were in commerce, the activities of the record keepers do not appear to be so closely related to interstate commerce as to be a part of it. The district court is affirmed as to these employees.

The district court declined to enjoin the Saxon Company from further violations of the Act with respect to the employees it found to be covered. It found that there had been no intention to violate the Act and that compliance was voluntarily made prior to the filing of the suit. The court felt there was no need for an injunction to secure future compliance with the law.

The Government contends that, if the violations were not committed with an intent to violate the Act, they were the result of Saxon's indifference to the Act and failure to inform himself of its provisions, continued even after an investigation had been made and Saxon had been advised that his employees were covered.

 There can be no question that the issuance of an injunction is a matter within the sound discretion of the trial judge. Mitchell v. Lublin, McGaughy & Associates, supra. The decision of the lower court is subject to review, and

where its discretion has not been exercised with an eye to the purposes of the Act, it will be reversed. Such decisions have been especially common in cases involving application of the Fair Labor Standards Act. We have remanded for issuance of an injunction where an employer's ignorance of coverage was the result simply of failure to bother to find out the facts or the law after the Secretary had asserted coverage. Mitchell v. Blanchard, 5th Cir. 1954, 272 F.2d 574; Mitchell v. Hausman, 5th Cir. 1958, 261 F.2d 778. Such may be the case here at least as to some of the employees. We have pointed out that an injunction does no more than require that the law be followed. Goldberg v. Cockrell, 5th Cir. 1962, 303 F.2d 811. The minimal inconvenience to the employer, balanced against the difficulties of enforcing the Act to the public benefit, argues strongly for issuance of an injunction. Mitchell v. Pidcock, 5th Cir. 1962, 299 F.2d 281, 287. The case must be remanded, and on remand further consideration should be given, under the tests laid out in Goldberg v. Cockrell, supra, to the question of whether or not injunctive relief should be ordered.

The judgment of the district court will be affirmed in part, reversed in part, in accordance herewith, and remanded for further action.

Reversed in part and affirmed in part, and remanded.

JOHNSON, District Judge (dissenting):

As to that part of the majority opinion affirming the District Court in its finding and conclusion that certain of the employees of the B. B. Saxon Company, Inc., were not "engaged in commerce or in the production of goods for commerce" within the meaning of the Fair Labor Standards Act, I dissent.

Craig Air Force Base operates as an integrated whole and as such is a part of the network of bases operated by the United States Air Force. All of the work performed by the appellee, B. B. Saxon Company, Inc., was similarly performed as a part of the integrated project. It was performed under one contract, supervised and administered by Craig Air Force Base personnel as a single entity. Appellee's contract called for keeping the planes fueled, the runways and streets in repair, the buildings in a fit condition for habitation, and the Air Force personnel who were stationed at Craig suitably housed. These functions were essential to the base's operation as an integrated unit of the United States Air Force network of bases.

Undoubtedly, Craig Air Force Base, as an installation, was and is a unit of interstate commerce. Mitchell v. Lublin et al., 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed. 2d 243 (1959); Mitchell v. Empire Gas Engineering Co., 256 F.2d 781 (5th Cir. 1958); Mitchell v. Blanchard, 272 F.2d 574 (5th Cir. 1959); Mitchell v. Ballenger Paving Co., 299 F.2d 297 (5th Cir. 1962).

It is equally well settled that any work which is so directly and vitally related to the functioning of such an instrumentality as to be, "in practical effect, a part of it, rather than isolated local activity," is "in commerce" within the meaning of the Fair Labor Standards Act. Mitchell v. Lublin, supra; Mitchell v. C. W. Vollmer & Company, 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196 (1955); Archer v. Brown & Root, Inc., 241 F.2d 663 (5th Cir.), cert. denied 355 U.S. 825, 78 S.Ct. 33, 2 L.Ed.2d 39 (1957). To proceed, as the majority does, to fragmentize the operation of Craig Air Force Base and to view its various facilities as isolated, distinct entities, and to conclude, therefore, that employees of the appellee were not in some instances engaged "in commerce," but, to the contrary performed work "purely local in nature," is completely unrealistic. Rather, employees who provide janitorial service in the base office buildings and other structures on the base, including the gymnasium, commissary and post office, employees who operate the sewage facilities, employees who are engaged in the control of insects and rodents in and around the buildings on the base so as to make them habitable

and fit for their intended purposes, employees who operate the base housing administration office and who are charged with the responsibility of allocating housing and collecting rents, and the employees who are engaged in keeping the time and payroll records for the other classes of Saxon's employees, are to me clearly performing duties and functions necessary for the efficient operation and maintenance of Craig Air Force Base; to break the operation of the base down into the various categories as the majority does defeats the purpose of the Fair Labor Standards Act. See Mitchell v. Lublin et al., supra; General Electric Company v. Porter, 208 F.2d 805 (9th Cir.), cert. denied 347 U.S. 951, 74 S.Ct. 676, 98 L.Ed. 1097 (1954); Goldberg v. Five Boro Construction Corporation, 291 F.2d 371 (1st Cir.), cert denied 368 U.S. 900, 82 S.Ct. 179, 7 L.Ed.2d 95 (1961). I therefore dissent.