Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee-Cross Appellant,

v.

J. M. FIELDS, INC., Defendant-Appellant-Cross Appellee.

No. 72–1066.

United States Court of Appeals, Fifth Circuit.

Nov. 16, 1973.

Rehearing and Rehearing En Banc Denied Jan. 17, 1974.

See also D.C., 335 F.Supp. 731.

444

⌨1594

Eli H. Subin, Orlando, Fla., for defendant-appellant.

Kalvin M. Grove, S. Richard Pincus, Chicago, Ill., for American Retail Federation, amicus curiae.

Beverley R. Worrell, Regional Sol., Dept. of Labor, Atlanta, Ga., Richard F. Schubert, Sol. of Labor, Bessie Margolin, Carin Ann Clauss, U.S. Dept. of Labor, Washington, D. C., for plaintiff-appellee.

Before TUTTLE, WISDOM and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

We review on this appeal the decision below in a case arising under the Equal Pay provisions [1] of the Fair Labor Standards Act (FLSA), Title 29, U.S.C., § 201 et seq. The district court found that the appellant, J. M. Fields, Inc. (Fields) had discriminated on the basis of sex in the payment of wages to supervisory personnel in three of the sixty-odd Fields' retail outlets. The court ordered payment to named employees of the minimum wages and overtime due them under the provisions of the Equal Pay Act (EPA or the Act).[2] The court also enjoined further violations of the Equal Pay Act ". . . in any of [Fields'] stores now in operation or hereafter operated by it." Fields as appellant and the Secretary of Labor (the Secretary) as cross-appellant each appeal from portions of the lower court's order.

## I. BACKGROUND: THE FIELDS ORGANIZATION

### A. *The National Organization*

Fields, a subsidiary of Food Fair Stores, Inc., is a chain-store enterprise operating more than sixty retail outlets in eleven states on the Eastern Seaboard of the United States. Fields' home offices are in New York City and Philadelphia, Pa. Its territory is divided into three regions for purposes of personnel administration. Each region is headed by a director who oversees the personnel files of employees in his area. The Fields' Industrial Relations Department in New York maintains all personnel files. Initial hiring of personnel and setting of salary rates for each of the individual Fields' stores is conducted either by the regional personnel director or by a representative of the New York office. In addition, the New York office issues periodic directives detailing salary ranges appropriate for different geographical areas and classes of employees. Finally, all wage increases are subject to approval either by the regional personnel director or by the New York office.

---

1. 29 U.S.C., § 206(d).

2. Under the provisions of 29 U.S.C., § 206(d)(3) amounts owing to employees as a result of violations of the Equal Pay Act are denominated "unpaid minimum wages or unpaid overtime compensation."

## B. *The Local Retail Outlets*

The individual Fields stores are each headed by a Store Manager and two Assistant Store Managers. Each of the departments within the store is headed by an Area Supervisor (also referred to as a Department Manager). Fields follows what is apparently an industry-wide practice of dividing its departments into two categories—softline goods and hardline goods. In softlines are included clothing and infant accessories (cribs, furniture, mattresses). The hardline departments contain all the other goods sold by Fields (housewares, cosmetics, automobile accessories and numerous other lines).

The function of the Area Supervisors in the hardline and softline departments is roughly similar, save in the matter of ordering replenishment stocks. The basic re-ordering of most softline goods is handled by a computer which is fed prepunched portions of sales tickets removed by cashiers when the items are purchased. Re-ordering of hardline goods is based, for the most part, upon physical counts of merchandise on hand. The Area Supervisors in the hardline departments are responsible for these counts. Managers in both hardline and softline departments must be cognizant of fast-moving items and reorder accordingly.

## II. THE COMPLAINT

On June 14, 1968, the Secretary filed a complaint alleging that Fields had violated and was continuing in violation of Sections 6(d) and 15(a)(2) of the Fair Labor Standards Act[3] in at least three of its retail outlets in Florida—those in Eau Gallie, Merritts Island, and Tallahassee. The Secretary's allegations were substantially as follows: (1) that male softline Area Supervisors were generally paid more than their female counterparts; (2) that male hardline Area Supervisors generally were paid more than their female counterparts; (3) that softline Area Supervisors were generally female; (4) that the softline Area Supervisors were generally paid less than the hardline Area Supervisors; (5) that there was no basis for a distinction between hardline and softline Area Supervisors for the purposes of the Equal Pay Act. The Secretary further alleged that Fields had had knowledge of the provisions of the Equal Pay Act during the entire period of the violations, and therefore, that the violations were wilful violations for the purposes of the Portal-to-Portal Act, Title 29, U.S.C., § 255(a); and that this had the effect of exposing Fields to possible liability for the payment of minimum wages and overtime for a three year (rather than a two year period in the case of non-wilful violations) period prior to commencement of the Secretary's suit.

Fields' answer asserted that it had not wilfully violated the Act in that it had not intended to discriminate among its Area Supervisors according to sex. Fields alleged that it had hired its Supervisors at the going market rate and that compensation had been based solely on the going market rate and not upon sex. Fields further answered that there was a basis for differentiation between the hardline and softline managers based

---

3. Section 6(d) of the FLSA, Title 29, U.S.C., § 206(d), provides, in pertinent part:

(d)(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and re- sponsibility, and which are performed under similar working conditions, * * *.

Section 15(a)(2) of the FLSA, Title 29, U.S.C., § 215(a)(2), provides in pertinent part:

(a) After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person—

(2) to violate any of the provisions of section 206 or section 207 of this title, or any of the provisions of any regulation or order of the Administrator issued under section 214 of this title; * * *.

on the skill and responsibility required of these respective positions. Particular reference was made in this respect to the different methods of ordering goods prevailing in the two types of departments, hardline and softline.

## III. THE OPINION BELOW

This district court entered findings of fact and conclusions of law supporting in the main the Secretary's position. The court found the existence of discrimination based upon sex in some particulars in each of the three Fields stores involved.[4] The court also found that the duties of Area Supervisor in the hardline and softline departments differed so substantially in terms of skill and responsibility as to require their being considered unequal for the purposes of the Equal Pay Act.[5] The court concluded as a matter of law that the discriminations in wages between sexes constituted violations of the Equal Pay Act.[6] The court concluded further that the discriminations were unintentional and therefore not wilful for the purposes of the Portal-to-Portal Act, Title 29, U.S.C. § 255(a).[7]

The district court judgment required Fields to refrain from withholding minimum wages and overtime compensation from the employees found to have been the object of violations of the Act, and further enjoined Fields from committing violations of the Act ". . . in any of its stores now in operation and hereafter operated by it." Both parties appeal from the findings, conclusions and judgment. We now consider the issues raised on appeal.

## IV. THE HARDLINE/SOFTLINE DISTINCTION

The district court found that there existed a distinction between the jobs of hardline Area Supervisor and softline Area Supervisor such that the two could not be compared for purposes of the Equal Pay Act.[8] This finding was undergirded by Findings of Fact Nos. 8 and 9:

> 8. The method of ordering in the hardline departments imposes on those Area Supervisors an *added responsibility* which required a *substantial portion of* their *working time.*[2] [Footnote 2 read: "Witness Peggy Smith, a Tallahassee hardlines supervisor testified that she spent four hours a day working on the preprint books."]

> 9. The *skill and responsibility* required of hardline managers is substantially greater than that required of softline managers. * * * [Emphasis added.]

Fields urges on appeal that we not only adopt the district court's findings of the existence of a distinction between hardline and softline managers, but also that we expand the scope of the softlines category to include "curtains and domestics." On cross appeal, the Secretary urges that the distinctions between hardline and softline managers' jobs are so minimal as to require their being considered equal for the purposes of the Equal Pay Act.

■ We begin by noting that the Findings of Fact numbered 8 and 9, and 22 are so conclusory in nature as to preclude the necessity of our applying the "clearly erroneous" standard of Rule 52 (a), F.R.Civ.P., on review. Baumgartner v. United States, 1944, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525; Shultz v. Wheaton Glass Co., 3 Cir. 1970, 421 F.2d 259, 267. In this situation we are required to consider only whether the findings are correct in the light of the provisions of the Equal Pay Act, the regulations thereunder, and prior decisions.

4. Hodgson v. J. M. Fields, M.D.Fla.1971, 335 F.Supp. 731, 732–733, Findings of Fact Nos. 10–20.

5. Id. Findings of Fact Nos. 8, 9, and 22.

6. Id. at 733, Conclusion of Law No. 2.

7. Id. Conclusion of Law No. 4.

8. Id. Finding of Fact No. 22.

The Equal Pay Act mandates equal pay for jobs "the performance of which requires equal *skill, effort, and responsibility*, and which are performed under *similar working conditions* . . ." * * * (E.P.A., Title 29, U.S.C., § 206 (d)(1). Emphasis added). The Regulations promulgated by the Department of Labor, 29 C.F.R. § 800.0 et seq., provide that: "The terms" [skill, effort, and responsibility] "are considered to constitute three separate tests, each of which must be met in order for the equal pay standards to apply." (29 C.F.R. § 800.-122).

■ We noted in Hodgson v. Brookhaven General Hospital, 5 Cir. 1970, 436 F.2d 719, 722, that the Secretary of Labor has the burden of proving "equality of work and inequality of pay." In meeting this burden, the Secretary is, however, required only to show that the jobs under consideration are "substantially equal," Hodgson v. Fairmont Supply Co., 4 Cir. 1972, 454 F.2d 490, 493. We think the Secretary met his burden in the instant case. He showed that the Area Supervisors in both hardline and softline departments were responsible for ordering merchandise, for assisting customers with their purchases, and for maintaining orderly and properly displayed racks of merchandise in their respective departments. This showed that the jobs were "substantially equal."

■ The principal factor involved in the district court's decision that the hardline and softline managers' jobs were unequal was the different method of ordering replacement merchandise prevailing in the two types of departments. Considered in the light of the tripartite test of substantial job equality, it cannot be said that the two methods differed in terms of skill involved. The record is unsatisfactory as to the existence of a possible ground for sustaining a blanket distinction between hardlines and softlines based on either effort or responsibility.

The regulations promulgated by the Department of Labor under the E.P.A. state that "skill includes consideration of such factors as experience, training, education, and ability . . ." 29 C.F.R. § 800.125. The evidence indicates no additional requirements for the position of hardline manager based on any of these factors. Indeed, the evidence as to training was precisely to the contrary: the softline managers received more extensive training in terms of time spent in the training program. Thus, we overturn the finding by the district court that the job of hardline manager required more skill than that of softline manager. Such a finding is without support in this record.

Because the findings of fact permit no conclusion on our part as to the elements of responsibility and effort involved in the different managerial positions, we remand for further findings on these two points. Our concern in this area of job equality between the two kinds of Area Supervisors is primarily with the sweeping nature of the district court's finding of job inequality and the meager support in the findings of fact for such a pronouncement. The district court found for example that the method of ordering in the hardline departments consumed a substantial portion of the working hours of the hardline managers. In support of this finding the court cited the fact that the manager of one of the hardline departments in one of the Fields' stores spent four hours a day reordering for her department.[9] This did not rebut the Secretary's proof of job equality, and does not support a finding that all hardline managers in all hardline departments spend an equal amount of time in reordering merchandise. Requisite to such a finding is proof that this single hardline Area Supervisor's experience typifies the requirements of the job of hardline manager; that the housewares manager, the garden shop manager, the automotive manager, and all the other hardline man-

---

9. Finding of Fact No. 8 and Note 2 thereto, text, supra.

agers are required to exert this effort in order to maintain their stocks—and further, that the softline managers are not similarly required to spend this amount of time checking the stock in their departments. Any lesser amount of proof would not support the broad distinction found by the district court to exist between the two positions. Accordingly, we remand the case to the district court for further findings as to the comparative degrees of effort and responsibility required in the supervision of hardline and softline departments. We add the admonition that the company-wide practice of distinguishing between hardlines and softlines is no basis without more for a conclusion of the existence of requisite distinction for purposes of E.P.A. Hodgson v. Golden Isles Convalescent Homes, Inc., 5 Cir. 1972, 468 F.2d 1256. The district court should explain its reasons for finding distinctions between hardline and softline in terms used in the Regulations. It is difficult if not impossible for us properly to evaluate district court findings and conclusions on review on any other basis.

### V. WILFUL OR NON-WILFUL VIOLATION?

The district court decided as a matter of law that Fields' violations of the Equal Pay Act were not wilful for the purpose of the Portal-to-Portal Act's three-year statute of limitations on claims for minimum wages and overtime due. 29 U.S.C., § 255(a). The determination was rather that the discrimination found was merely the unintended result of Fields' practice of hiring persons at whatever wage it could. The Secretary urges on cross-appeal that the district court's finding on the question of wilfulness is contrary to our holding in Coleman v. Jiffy June Farms, Inc., 5 Cir. 1970, 458 F.2d 1139, rendered some five months after the findings and conclusions were entered in the instant case.

In *Jiffy June Farms*, we considered a violation of the Fair Labor Standards Act occurring within the context of a collective bargaining agreement in which the employees had agreed to exempt themselves from FLSA provisions in exchange for a raise in pay. The record there disclosed in addition that the employer had sought and secured advice of counsel that this arrangement would in fact exempt the employees from the FLSA. Judge Wisdom, speaking for the court, proposed the following as the test of wilfulness to be applied in cases concerned with civil liability for violations of the FLSA: "Stated most simply, we think the test should be: Did the employer know the FLSA was in the picture?" Id. at 1142. Judge Wisdom stated: "The entire legislative history of the 1966 amendments of the FLSA indicates a liberalizing intention on the part of Congress. Requiring employers to have more than awareness of the possible applicability of the FLSA would be inconsistent with that intent." Id.

In the instant case, the record discloses that Fields' central office sent memoranda to its district managers and store managers advising them of the implementation of the E.P.A., and of the requirements of the Act. In addition, Fields' regional personnel managers were under instructions to make periodic examinations of the personnel files of the Fields stores and to report any possible violations of the E.P.A. to the New York office. This was sufficient to establish that Fields knew "that the FLSA was in the picture." In defense of the district court finding Fields argues that the random pattern of wage discrimination together with the cessation of *per se* violations of the Act prior to trial indicates that the violations were negligent and not wilful. We apply the test as enunciated in *Jiffy June Farms*, supra, as the correct test. To allow exceptions for "random" discrimination or in situations where an employer, once charged with violating the Act, corrects the unlawful practice, would sap much of the E.P.A.'s vitality. Such a construction would create unnecessary problems for future courts attempting to construe the Act. We determine that the district court erred in finding that Fields' violations were not wilful for the purposes of the Portal-to-Portal Act's three-year statute

of limitations. We remand with directions to modify the judgment so as to allow employees overtime and minimum wages for a period of three years from the date that the cause of action accrued.

## VI. THE CHAIN-WIDE INJUNCTION

The district court by its decree enjoined Fields from violating the provisions of the Equal Pay Act "in any of its stores now in operation and hereafter operated by it . . ." Fields here challenges the issuance of a chain-wide injunction on the facts of the instant case, and urges that the injunction be modified. In support of the district court's injunction the Secretary points out that the violations in the instant case occurred in the context of close centralized supervision over wage scales and pay policies in the individual stores, and urges that a chain-wide injunction was appropriate to restrain what had apparently been a company policy regarding hiring and setting of wage scales.

██ We start with the rubric that the granting of injunctive relief in FLSA suits is a matter within the sound discretion of the district judge. We will not overturn or modify an injunction in such suits without a showing of clear abuse of that discretion. In determining the existence vel non of an abuse of discretion it is necessary to examine policies underlying the FLSA and the purposes served by injunctions in suits under the FLSA. Wirtz v. Ocala Gas Co., 5 Cir. 1964, 336 F.2d 236, 240.

See Goldberg v. Cockrell, 5 Cir. 1962, 303 F.2d 811, 814, where we considered the role of the injunction in the context of the FLSA:

"Issuance of an injunction in cases such as these does not subject an employer to any penalty for his past violations of the law. It merely says: in the future do what the law requires you to do. The injunction shifts the responsibility for compliance onto the employer's shoulders. * * * The Wage and Hour Division cannot reasonably be charged with the responsibility of checking back on past violators to make sure that they are obeying the laws. Fairness and economy of administrative effort both dictate that after an employer has once violated the Act he should bear his own responsibility for the future." [10]

In Wirtz v. Ocala Gas Co., supra, 336 F.2d at 240, we noted further:

"Inasmuch as [the injunctions] are a means of effecting general compliance with national policy expressed by Congress, they are to be utilized in the light of the purposes of the Act, in aid of the administrative efforts at enforcement, and not grudgingly."

See further our statement in Hodgson v. First Federal Savings and Loan Ass'n, 5 Cir. 1972, 455 F.2d 818, 826, that "courts should not be loath to issue injunctions of general applicability." We review the context in which the injunction in the instant case issued in the light of these principles.

██ Fields, as stated, has more than sixty stores in its chain. Evidence introduced at trial indicated that Fields' hiring and wage policies were subject to centralized control of a significant degree. It was hardly an abuse of discretion in these circumstances for the district court to enjoin Fields as a corporate defendant rather than to enter a limited injunction against the individual stores found to be in violation of the Equal Pay Act. It would frustrate the

10. This approach was justified by this statement in the opinion:

"* * * Unlike most statutes regulating conduct, the Fair Labor Standards Act does not carry any immediate sanction. In effect it gives each employer one free offense: on proof of violation he is liable at most for repayment of the wages that he originally should have paid his employees, to the extent that the unpaid wages can be proven. This rule may be justified on the basis of avoiding punishment of those who are ignorant of the law or do not believe that it applies to them; but no law can be effectively enforced if individuals are allowed to make repeated violations of it with impunity. One unexplained offense is enough." 303 F.2d at 814.

broad purposes of the FLSA in suits involving large corporate defendants with extensive branch operations to require the Secretary to investigate and prove violations in all or substantially all of the defendant's branches to justify the issuance of a chain-wide injunction. Considerations of administrative necessity are persuasive as warranting the chain-wide injunction issued below. Again we quote Wirtz v. Ocala Gas Co., supra, 336 F.2d at 240:

> "These FLSA injunctions are not excessively burdensome as this Court has pointed out heretofore. They subject the defendants to no penalty or hardship. They require no more than that the defendants comply with the law. [Citation omitted] Their aim is remedial and not punitive. * * *"

We find that the issuance of a chain-wide injunction in this case was not an abuse of discretion, and affirm the district court on this point.

The language of the injunction was overly broad in this one respect: the district court framed its injunction in terms that apply not merely to the class of employees involved in the instant litigation, the Area Supervisors, but as well to all Fields' employees. There was no proof of discrimination in classes of employees other than Area Supervisors, and accordingly we direct that the terms of the injunction be modified to limit its applicability to this class of employees. The language contained in the injunction against further violations of the Equal Pay Act should be modified by substituting the term "Area Supervisor" for the term "employee(s)". Cf. Hodgson v. Corning Glass Works, 2 Cir. 1973, 474 F.2d 226, cert. granted, —— U.S. ——, 94 S.Ct. 839, 38 L.Ed.2d 737 (1973).

Affirmed in part, reversed in part, modified in part, and remanded for further consideration.

ON PETITIONS FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The motion of the Secretary of Labor to strike the last paragraph of the Court's opinion of November 16, 1973, is not passed upon.

The Secretary of Labor's alternative petition for rehearing is granted to the extent that the last paragraph of the body of the printed slip opinion, page 16, commencing with the words "The language of the injunction * * *" and ending with the words " * * * Cf. Hodgson v. Corning Glass Works, 2 Cir. 1973, 474 F.2d 226." is withdrawn in its entirety, and said petition is otherwise denied.

The petition for rehearing of J. M. Fields, Inc. is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the petition for rehearing en banc is denied.