NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2749
_____

SECRETARY UNITED STATES DEPARTMENT OF LABOR

v.

MOSLUOGLU, INC., d/b/a Empire Diner;
IHSAN GUNAYDIN; ENGIN GUNAYDIN,
                    Appellants
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-04663)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 11, 2023

Before:  JORDAN, BIBAS and PORTER, *Circuit Judges*

(Filed: September 14, 2023)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Mosluoglu, Inc., Ihsan Gunaydin, and Engin Gunaydin challenge the District Court's judgments that they violated various provisions of the Fair Labor Standards Act ("FLSA"). We will affirm.

## I.    BACKGROUND

Mosluoglu, Inc. operates Empire Diner, a 24-hour restaurant in Lansdowne, Pennsylvania. Ihsan is the sole owner of Empire Diner and has operated it since 1997. Ihsan's son, Engin, is Empire Diner's manager and works closely with Ihsan to manage the diner's day-to-day operations. For simplicity, and except as necessary for individual treatment, we will refer to all three Appellants collectively as "Empire."

When Empire hired its servers, it told them they would be paid $2.83 per hour, plus tips. It did not tell them that it would be using the "tip credit" allowed by the FLSA to satisfy its legal obligation to pay them a $7.25 minimum wage. Empire did not record the actual amount of cash tips its servers received, alleging difficulties in getting its servers to report them. Instead, it "guesstimate[d]" the amount of the cash tips.[1] (Opening Br. at 9; J.A. at 2644.) Its payroll records showed that, after adding the "guesstimate," each server always earned precisely $7.63 per hour, exceeding the required minimum wage obligation. At the end of a shift, servers often contributed a

---

[1] Empire paid its servers the credit card tips that each server received.

portion of their cash tips to be placed in a shared tip box. Empire did not retain a record of the tips that the servers contributed.

During the relevant period, Empire usually paid its servers an overtime premium of one and one-half times the $2.83 rate, instead of the $7.25 minimum wage rate required under the FLSA. Some employees received no overtime premium when they worked overtime.

The Department of Labor's Wage and Hour Division ("WHD") opened an investigation into Empire's pay practices in August 2017.[2] After concluding the investigation, the Secretary of Labor filed a complaint against Empire, alleging violations of the minimum wage, overtime, and recordkeeping obligations set forth in Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the FLSA, and seeking back wages and liquidated damages for the employees. The Secretary also sought to permanently enjoin Empire from further violations of the FLSA.

After discovery, the parties filed cross motions for summary judgment. The District Court denied Empire's motion in full. It granted the Secretary's motion as to three issues: Mosluoglu, Inc.'s and Ihsan's liability for violations of (1) minimum wage, (2) overtime, and (3) recordkeeping obligations. It denied the Secretary's motion as to five issues: (1) whether Engin is an employer under the FLSA and thus jointly and severally liable for the FLSA violations, (2) whether Empire acted willfully when

---

[2] Empire acknowledged that the WHD had previously investigated it in 1999, and it was found to be in violation of the FLSA.

violating the FLSA, (3) whether liquidated damages should be imposed, (4) what the amount of back wages are, and (5) whether the Secretary was entitled to injunctive relief.

The District Court held a five-day bench trial on the five undecided issues. It then determined that Engin is an employer under the FLSA, that Empire willfully violated the FLSA, that Empire is liable for $675,626.67 in back wages, that Empire is liable for liquidated damages, and that injunctive relief is appropriate. Empire responded by filing a post-trial motion to amend the District Court's findings, a request for a new trial, and a request for relief from judgment, which the District Court denied.

This timely appeal followed.

## II.   DISCUSSION[3]

### A.     Engin is an Employer under the FLSA.

At summary judgment, the District Court found only Mosluoglu, Inc. and Ihsan liable for violations of the FLSA. After trial, it determined that Engin was also liable. We begin by reviewing that decision, before moving to the other issues on appeal.

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1345. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review summary judgment decisions de novo, applying the same standard as the district court was obligated to apply." *Am. Home Assurance Co. v. Superior Well Servs., Inc.*, 75 F.4th 184, 188 n.4 (3d Cir. 2023). That is, we will uphold a grant of summary judgment if there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. *Nitkin v. Main Line Health*, 67 F.4th 565, 570 n.2 (3d Cir. 2023). As for the findings of fact and conclusions of law after trial, we review questions of law de novo and findings of fact for clear error. *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 165 n.8 (3d Cir. 2023).

Section 203(d) of the FLSA defines the term "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C § 203(d). "[T]he alleged employer must exercise significant control" over employees, as we explained in *In re Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 468 (3d Cir. 2012) (internal quotation marks and citation omitted). To determine whether a party is an employer under the FLSA, we apply the four-factor test from *Enterprise Rent-A-Car*. We consider the alleged employer's (1) "authority to hire and fire" the relevant employees; (2) "authority to promulgate work rules and assignments" and to set the employees' conditions of employment; (3) "involvement in day-to-day employee supervision, including employee discipline;" and (4) "actual control of employee records, such as payroll, insurance, or taxes." *Id.* at 469. That list is not exhaustive, and we can consider other indicia of significant control. *Id.* at 469-70.

The first factor weighs in favor of Engin being an employer as he interviewed and hired the diner's servers and bussers. Empire argues that the decision to hire employees "was a collaborative decision" between Engin and Ihsan and that Ihsan could object to Engin's hiring decisions. (Reply Br. at 24.) Ihsan acknowledged, however, that Engin was assigned to hire the front-of-the-house employees while Ihsan would hire the kitchen staff. Furthermore, Engin hired some employees on the spot after interviewing them, without Ihsan's direction.

The second and third factors also weigh in favor of Engin being an employer. He worked with Ishan to set work schedules, assign employees to workstations, and make

5

policy decisions for the restaurant. An employee also testified that when she needed to adjust her work schedule, she would ask Engin for permission. That employee also testified that Engin was responsible for discipline at the restaurant.

The fourth factor also weighs in favor of Engin being an employer. He, along with Ihsan, wrote out employees' time sheets and sent that information to payroll, deposited the tips that servers contributed to the tip box, and handed paychecks to the employees.

Empire's argument that Engin "merely followed the dictates of Ihsan" is not supported by the record. (Opening Br. at 52.) There is more than sufficient evidence to show that Engin had significant control over the diner's employees, even if Ihsan retained ultimate authority over the operation of the business. We will therefore affirm the District Court's holding that Engin is an employer under the FLSA.

**B.      Empire Violated the FLSA's Minimum Wage Requirements.**

Section 206 of the FLSA requires employers to pay each of its covered employees a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a). Employers in Pennsylvania, however, can pay a tipped employee less than the FLSA minimum wage if the employee's cash wage is at least $2.83 per hour and the employee receives at least $7.25 per hour after adding tips. 29 U.S.C. § 203(m)(2); 34 Pa. Code § 231.101a(b) (2023). This is known as the "tip credit" provision, and an employer can take advantage of it only if its employees have "been informed by the employer of the [Section 203(m)(2)] provisions[.]" 29 U.S.C. § 203(m)(2)(A)(ii); *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403

6

(3d Cir. 1994). "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage[.]" *Chez Robert*, 28 F.3d at 403. Evidence of actual tips received does not reduce an employer's liability.[4] *Id.* at 404.

Empire did not inform its servers of the tip credit provisions when they were hired. It told them only what wage they would be paid and that they would receive tips.[5] Empire argues that its employees nonetheless had notice of the tip credit because it kept a poster in the kitchen showing minimum wage rates and because the servers "had worked as servers for years." (Opening Br. at 23-24.) But Empire never produced the poster during discovery or at trial, and there is no evidence in the record as to the poster's content. We will therefore affirm the District Court's holding that Empire violated the FLSA's minimum wage requirements.

## C. Empire Violated the FLSA's Overtime Requirements.

Section 207 of the FLSA requires that wage-earning employees receive one and one-half times their regular rate of pay for any hours worked over a forty-hour

---

[4] Accordingly, Empire's argument that none of its servers received less than minimum wage does not alter its liability.

[5] Empire argues that *Acosta v. Las Margaritas, Inc.*, No. 2:16-cv-1390-NIQA, 2018 WL 6812370, at *9 (E.D. Pa. Dec. 27, 2018), supports its position that it met the notice requirement. In *Acosta*, the district court held that the notice requirement provision was met because the employer in that case told its tipped employees the hourly wage they would receive and that they would "earn the difference of minimum wage through collecting tips." *Id.* We take no position on whether the district court's holding in that case was correct, but we observe that the employer in *Acosta*, unlike Empire, informed its employees that they would earn a minimum wage.

7

workweek. 29 U.S.C. § 207(a)(1). Empire admits it erred in paying an overtime rate of $4.25 per hour (one and one-half times the $2.83 rate) instead of $10.88 per hour (one and one-half times the $7.25 minimum wage). Additionally, Empire failed to pay some of its employees any overtime premium when they worked overtime.[6] Accordingly, we will affirm the District Court holding that Empire violated the FLSA's overtime requirements.

### D. Empire Violated the FLSA's Recordkeeping Requirements.

Section 211(c) of the FLSA requires employers to "make, keep, and preserve records … of the wages, hours, and other conditions and practices of employment[.]" 29 U.S.C. § 211(c). We have held that Section 211(c) requires employers to "maintain accurate records to ensure that all workers are paid the minimum wage for every hour worked." *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984). Empire admits that it used a "guesstimate" to approximate the amount of cash tips its servers received. (Opening Br. at 49.) A "guesstimate" untethered to any actual effort to keep track of tips does not constitute accurate recordkeeping. Empire did nothing to keep a record of the tips that the servers contributed to the tip box after their shifts, nor did it do anything to keep track of cash tips in general. Therefore, we will affirm the District Court's holding that Empire violated the recordkeeping requirements of the FLSA.

---

[6] Rather than dispute its failure to properly pay its employees for their overtime, Empire argues only that the errors were de minimis, that it relied on its accounting firm when calculating overtime, and that it corrected its procedures prospectively. Depriving wage earners of thousands of dollars over a three-year period is not de minimis, and Empire does not support its contentions with any persuasive legal arguments.

### E.  Empire Willfully Violated the FLSA.

Generally, the statute of limitations for minimum wage and overtime violations of the FLSA is two years.  29 U.S.C § 255(a).  That period is extended to three years if the violation was willful.  *Id.*  An employer commits a willful violation when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited[.]"  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  An employer's conduct need not be egregious to establish willfulness.  *Stone v. Troy Constr., LLC*, 935 F.3d 141, 149 (3d Cir. 2019).

There is sufficient evidence to show that Empire willfully violated its minimum wage, overtime, and recordkeeping obligations under the FLSA.  During trial, Ishan acknowledged that he simply made up a number to account for servers' cash tips in his payroll calculations to ensure that the servers would not appear to be making less than the minimum wage.  The District Court also found that, when the WHD investigation began, Empire asked multiple employees to lie about the restaurant's overtime and tip contribution policies.  Therefore, we will affirm the District Court's holding that Empire willfully violated the FLSA.

### F.  The District Court Correctly Held Empire Liable for Liquidated Damages.[7]

By default, an employer who violates the minimum wage requirements or overtime requirements of the FLSA is liable for the amount of unpaid wage and overtime

---

[7] We review a decision to deny or limit liquidated damages for abuse of discretion. *Sec'y U.S. Dep't of Labor v. Am. Future Sys., Inc.*, 873 F.3d 420, 425 (3d Cir. 2017).

compensation, plus an equal amount as liquidated damages. 29 U.S.C. § 216(c). But if a court finds that the employer acted in good faith and had reasonable grounds for believing the act or omission was not a violation of the FLSA, the court may use its discretion to not award liquidated damages. 29 U.S.C. § 260. The employer has the "plain and substantial" burden of proving it is entitled to discretionary relief from the FLSA's liquidated damages provision. *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991). To show good faith, "a defendant employer must show that he took affirmative steps to ascertain the [FLSA's] requirements, but nonetheless, violated its provisions." *Id.* at 908. To show reasonableness, the employer must have acted as a "reasonably prudent man would have acted under the same circumstances." *Brooks v. Vill. of Ridgefield Park*, 185 F.3d 130, 137 (3d Cir. 1999).

Empire has not met its burden of proof. It offers four reasons to show that it acted reasonably and in good faith, but each fails. First, Empire's allegation that it "did not know there needed to be written records" (Opening Br. at 39) is unavailing because "[i]gnorance alone will not exonerate the employer under the objective reasonableness test." *Williams*, 747 F.2d at 129. Second, Empire argues that it acted in good faith because the 1999 WHD investigation did not provide notice of any FLSA violation. But the findings of a prior investigation do not eliminate Empire's duty to take affirmative steps to learn and comply with the FLSA. Third, Empire alleges that it relied on its accountants to keep it in compliance with the FLSA. Empire has pointed to no controlling legal authority in support of its position that hiring an accountant relieves an

10

employer of its responsibilities under the FLSA.  Fourth, Empire argues that it "immediately rectified its pay practices once it learned of issues[.]"  (Reply Br. at 21.) While we hope that Empire complies with the law going forward, good faith and reasonableness are determined as of the time of the violation, not thereafter.  The District Court did not abuse its discretion in granting liquidated damages.[8]

### G.  Injunctive Relief is Appropriate.[9]

Section 217 of the FLSA allows a district court to restrain future violations upon a showing of cause.  29 U.S.C. § 217.  "Factors that district courts consider in deciding whether to issue an injunction include the employer's past conduct, current conduct, and, most importantly, whether the employer can be counted on to comply with the FLSA in the future."  *Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 815 (W.D. Pa. 2013).  "We will not overturn or modify an injunction in such suits without a showing of clear abuse of that discretion."  *Brennan v. J. M. Fields, Inc.*, 488 F.2d 443, 449 (5th Cir. 1973).

---

[8] We will affirm the District Court's calculation of damages of $675,626.67 in back wages.  The Court correctly calculated that amount based on the applicable statute of limitations, beginning from the time the complaint was filed, not the period of investigation by the WHD, as Empire seems to suggest.

[9] "Our standard of review of a district court's decision granting a permanent injunction is an abuse of discretion."  *Benezet Consulting LLC v. Sec'y Commonwealth of Pennsylvania*, 26 F.4th 580, 584 (3d Cir. 2022).

Empire violated the FLSA in 1999, and it willfully violated the FLSA during the period now in question. We accordingly find no reason to question the District Court's discretion to grant an injunction.[10]

## III.  CONCLUSION

For the foregoing reasons, we will affirm the District Court.

---

[10] Empire's post-trial motion is reviewed under an abuse of discretion standard. *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009) ("The standard of review on a motion for a new trial is abuse of discretion[.]"); *Cox v. Horn*, 757 F.3d 113, 118 (3d Cir. 2014) (stating that a motion for relief from judgment is reviewed for abuse of discretion). For the same reasons stated in this opinion, we will affirm the District Court's denial of Empire's post-trial motion.